(C. D. 202)

B. A. McKenzie & Co., Inc. v. United States

United States Customs Court, Second Division

(Decided August 21, 1939)

*Lawrence & Tuttle* (*George R. Tuttle* of counsel) for the plaintiff.

*Webster J. Oliver*, Assistant Attorney General (*Daniel G. McGrath*, special attorney, and *Joseph A. Howard, Jr.*, junior attorney), for the defendant.

Before TILSON, KINCHELOE, and DALLINGER, Judges

DALLINGER, Judge: This is a suit against the United States, arising at the port of Tacoma, Wash., brought to recover certain customs duties alleged to have been improperly exacted on a particular importation of electrical parts of electrically-controlled equipment for operating pulp-making machinery. Duty was levied thereon at the rate of 35 per centum ad valorem under paragraph 353 of the Tariff Act of 1930 as parts of a machine "suitable for producing, rectifying, modifying, controlling, or distributing electrical energy." It is claimed that said articles are properly dutiable at only 20 per centum ad valorem under the provision in paragraph 356 of said act for "all other stock-treating parts for pulp and paper machinery," which language is incorporated in the Swedish trade agreement of July 8, 1935, promulgated in T. D. 47785, 68 Treas. Dec. 19.

The plaintiff offered in evidence the testimony of a single witness. No evidence was offered by the Government.

The witness, John M. Wilcox, resident engineer in the employ of the St. Regis Kraft Co., manufacturers of pulp at Tacoma, Wash., testified that the imported articles consisted of electrical spare parts of various sizes for specific use in the electrical control equipment of a pulp-making machine; that said machine could not properly be controlled in operation without said parts; and that said articles had no other use than as such parts.

The witness described the operation of a pulp-making machine as follows:

\* \* \* the machine consists of two major parts and a minor part: What we call the "wet end" or "Fourdrinier end," upon which the sheet of pulp is formed; then it passes to a second major part, which is called the "drying end," and the sheet is dried out; and the third part, which is more or less of a minor part, is a piece of equipment that cuts the sheet and piles it into stacks.

On cross-examination the witness testified that such a pulp-making machine could be converted into a paper-making machine, but that the cost rendered it impracticable; that nothing besides pulp or paper could by any possibility be produced by such a machine; that the parts constituting the imported merchandise at bar are for the electrical control and equipment of the said machine; and that said machine could not function without such electrical control.

The record contains no evidence that the imported parts are in any sense stock-treating parts of pulp-making machinery within the meaning of said paragraph 356, which is the only paragraph under which the plaintiff herein claims. Upon this point both this court and the appellate court have interpreted said paragraph 356.

In the case of *California Fruit Wrapping Mills (Inc.)* v. *United States*, 19 C. C. P. A. 381, T. D. 45513, it was held that certain Fourdrinier wire screens, although parts of paper-making machines, were not stock-treating parts of said machines, as contemplated by said paragraph. The court said:

> We do not think that the legislative intent in the use of the words "stock-treating parts for pulp and paper machinery" is so apparent as to exclude consideration of the doctrine of *ejusdem generis* or other applicable rules of construction.

> We agree with the lower court that the screens here involved are not *ejusdem generis* with the articles designated in said paragraph 356. The articles named in the paragraph are those which cut, grind, or beat material, or assist in performing those functions. It is established that the screens here involved neither perform nor assist in performing such functions.

> If appellant be correct in its contention that the broadest possible definition of the word "treat" be here applied, then all processes of paper making short of the actual production of paper are stock-treating processes. Appellant's witness testified that the second squeezing out of water from the material, which takes place after it has left the screens here involved, results in the formation of paper. That is to say, after sufficient water has been squeezed out of the material, the resulting product is paper. We are convinced that Congress never intended that all manufacturing processes in the production of paper, short of the actual formation of paper, should be regarded as stock-treating processes.

> \*      \*      \*      \*      \*      \*      \*

> As heretofore indicated, we think that the words "stock-treating parts," as used in said paragraph 356, refer to the treatment of paper and pulp material before it has reached the stage of going upon the wire screens here involved, and refer to parts which perform, or assist in performing, the functions of cutting, grinding, beating, or similar functions. Inasmuch as we conclude that the wire screens involved do not perform such functions, but serve in the process of manufacturing paper from stock they cannot be held to be "stock-treating parts for pulp and paper machinery," and were properly held dutiable by the collector under the provisions of said paragraph 372.

Although the above case arose under the Tariff Act of 1922, the wording of the pertinent provision in paragraph 356 of the act of 1930 is identical with that of the same paragraph in the act of 1922.

In the case of *A. C. Williams & Co.* v. *United States*, T. D. 45950, 62 Treas. Dec. 375, this court followed the rule laid down by the appellate court in the case of *California Fruit Wrapping Mills (Inc.)* v. *United States, supra.*

In the instant case it is perfectly evident from the record that the imported articles are in no sense stock-treating parts of pulp-making machinery, but are simply electrical parts of the operating mechanism of such machinery and are therefore not within the scope of said paragraph 356.

Counsel for the plaintiff, however, in their brief filed herein, make the following statement:

Although it is probably true that the pulp-making machine described in this record is an article or machine "having as an essential feature an electrical element or device." Yet the specific enumeration now contained in paragraph 372 (by virtue of the Swedish trade agreement), of "machines for making paper pulp or paper, not specially provided for, and parts thereof." is without doubt a more definite and accurate tariff description of these articles. Note Forstmann v. US, TD 49222, now pending on appeal as suit 4157.

Unfortunately, however, the plaintiff in its protest herein, made no claim under paragraph 372 of the Tariff Act of 1930, but merely claims the merchandise to be properly classifiable at the rate of 20 per centum ad valorem under paragraph 356 of the Tariff Act of 1930 and the Swedish trade agreement, T. D. 47785.

The mere fact that the plaintiff mentioned T. D. 47785 in conjunction with paragraph 356 does not give the plaintiff the right now to claim that the merchandise is properly dutiable under any paragraph modified by the Swedish trade agreement in question, particularly since paragraph 356 is one of such paragraphs. For aught we know the citation might have been intended to refer to said paragraph 356. If it should be held that the present protest properly sets forth the claim under paragraph 372 as modified by T. D. 47785, then, as counsel for the Government points out in his brief filed herein, it would logically follow that the merchandise could be held dutiable under any paragraph if the importer merely claimed the merchandise to be properly dutiable under the Tariff Act of 1930, without specifying any particular paragraph. With such a doctrine we do not agree. While, therefore, if the plaintiff had made the proper claim under paragraph 372, as modified by the Swedish trade agreement, we would be inclined to hold that the involved merchandise was more specifically and *eo nomine* provided for in said paragraph 372, as modified by said Swedish trade agreement, and as such properly dutiable thereunder, the proper claim was not alleged in the protest, and therefore the collector's classification, even if erroneous, must nevertheless stand. Judgment will be rendered accordingly.